UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:11CV2039 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| RICHARD M. OSBORNE, SR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motions (ECF DKT #44 & #56) to Dismiss Defendants' Counterclaims (ECF DKT #38 & #42). For the following reasons, the Motions are granted in part and denied in part. The First, Third, Fourth and Fifth Claims for Relief are dismissed, pursuant to Fed.R.Civ.P. 12(b(6), for failure to state a claim upon which relief may be granted. The Second Claim for Relief remains pending for further adjudication.

### I. BACKGROUND

The United States commenced this civil action, under Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), to obtain injunctive relief and civil

penalties against Richard M. Osborne, Sr. ("Osborne"), Great Plains Exploration , LLC ("Great Plains"), Center Street Investments, Inc. ("Center Street"), Callendar Real Estate Development Company, LLC ("Callendar"), and Osair, Inc. ("Osair") (collectively "Defendants"), for the discharge of pollutants into the waters of the United States in Painesville, Lake County, Ohio, without a Section 404 permit from the United States Department of the Army Corps of Engineers ("Corps"), in violation of CWA Section 301(a), 33 U.S.C. § 1311(a). Specifically, the case involves the allegedly unpermitted fill of wetlands at a rock crushing facility located at 220 Blackbrook Road in Painesville, Ohio, i.e., the Great Plains Exploration Site or "Site." The United States seeks to (1) enjoin the discharge of pollutants into waters of the United States without a permit, in violation of CWA Section 301(a), 33 U.S.C. § 1311(a); (2) require Defendants, at their own expense and at the direction of the EPA, to restore and/or mitigate the damages caused by their unlawful activities; and (3) require Defendants to pay civil penalties as provided in 33 U.S.C. § 1319(d).

Defendants filed their Answers and Counterclaims (ECF DKT #38 & #42) against the United States; Lisa P. Jackson in her official capacity as EPA Administrator; Susan Hedman, in her official capacity as EPA Region 5 Administrator; David Schulenberg, in his official capacity as an EPA Region 5 Senior Enforcement Officer; Wendy Melgin, in her official capacity as EPA Region 5 Wetland Section Chief; the United States Army Corps of Engineers (the "Corps"); Tina P. Stonemetz, in her official capacity as a Corps biologist; Major General Meredith W.B. Temple, in his official capacity as Acting Chief of the Corps; and Lieutenant Colonel Stephen H. Bales, in his official capacity as Commander of the Buffalo District of the Corps (collectively, the "United States").

Defendants assert five claims for relief: (1) a facial challenge to the constitutionality of Section 309(a) of the CWA, 33 U.S.C. § 1319(a), under the Due Process Clause; (2) an as-applied challenge to the constitutionality of the EPA's and the Corps' assertion of regulatory jurisdiction over the Site, under the Due Process Clause and the Commerce Clause; (3) a claim that the Corps' 1987 Wetland Delineation Manual ("Manual") violates the Administrative Procedure Act's ("APA") provisions for legislative rulemaking; (4) a claim that the Manual violates the Regulatory Flexibility Act's ("RFA") requirements; and (5) a claim for malicious prosecution.

**Statutory Framework and Government Actions Taken**

Under CWA Section 301(a), 33 U.S.C. § 1311(a), no person may discharge a pollutant into waters of the United States without a permit. If the pollutant consists of dredged or fill material, the required permit is issued by the Corps under CWA Section 404. *Id*. § 1344. Upon determining that a violation of Section 301(a) has occurred, Section 309(a) provides that the EPA Administrator may either issue an administrative compliance order "requiring such person to comply with such section," or may initiate a civil enforcement action. *Id*. § 1319(a)(3). The Corps may also take steps designed to bring violators into compliance. Upon determining that a discharge of a pollutant has occurred without a required Section 404 permit, and that initial corrective measures are required, the District Engineer for the relevant Corps district may issue "a cease and desist order prohibiting any further work pending resolution of the violation." 33 C.F.R. § 326.3(c). In addition, if initial corrective measures are required, the District Engineer may also issue an order specifying such measures. *Id*. § 326.3(d). However, such orders are different from a compliance order issued by EPA under

Section 309.

According to the allegations in the Counterclaims, on October 24, 2008, the Corps issued a Cease and Desist and Interim Corrective Measures Order, requiring stoppage of "all activities within Waters of the United States" at the Great Plains Site. (Exhibit D, ECF DKT #42-4). The Corps determined that work, including filling of jurisdictional areas, had occurred without Department of the Army authorization, in violation of Section 404 of the CWA. *Id*. "Stop Work" signs were posted and corrective measures were ordered completed by November 7, 2008. *Id*. The Cease and Desist Order has not been rescinded.

## II. LAW AND ANALYSIS[1]

### Civil Rule 12(b)(6) Standard

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the

---

[1] The Counterclaims (aside from the Fifth Claim for Relief) and the arguments for and against dismissal mirror those found in Case No. 1:11CV1029; therefore, the Court will apply the same analysis as in its Opinion and Order in that case. (ECF DKT #180).

> misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No.1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

**First Claim for Relief in Defendants' Counterclaims**

Defendants' First Claim is a facial challenge to Section 309(a) of the CWA, 33 U.S.C. § 1319(a), alleging violation of the Fifth Amendment to the United States Constitution by depriving Defendants of their property without procedural due process.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that ***no set of circumstances*** exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). (Emphasis added).

Even accepting all factual allegations in the First Claim as true, the Court finds that Defendants have failed to show that Section 309 of the CWA is unconstitutional under all conceivable circumstances. Therefore, Defendants' facial constitutional due process claim is

dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

**<u>Second Claim for Relief in Defendants' Counterclaims</u>**

Defendants make an as-applied challenge to Section 309(a) of the CWA, 33 U.S.C. § 1319(a), alleging violation of the Fifth Amendment to the United States Constitution by depriving Defendants of their property without procedural due process. The United States argues that Defendants have neither concrete, traceable, nor redressable injuries, and do not allege a deprivation of a legally protected interest.

The Court disagrees. Accepting all factual allegations and reasonable inferences as true, Defendants' as-applied constitutional challenge survives dismissal.

The October 24, 2008 Cease and Desist Order, which has not been lifted, requires Defendants to halt all work on the Site. Defendants allege that the issuance of the Cease and Desist and corrective measures Order, with its continuing mandatory compliance obligations, adversely affects their ability to use, market, or sell the Site, and impacts potential relationships with vendees, lessees, and contractors.

The United States insists that Defendants have suffered only monetary injury; and have failed to identify a legitimate property interest protected by the Fifth Amendment.

However, liberty and property are "broad and majestic terms;" and the Supreme Court "has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571-572 (1972). Property protected by due process is not just the property considered as a whole, but "any subsidiary property right." *Id*. at 577.

Thus, applying the broad brush of property rights as the Supreme Court directs, this

Court finds that Defendants' Second Claim for Relief, asserting an as-applied constitutional challenge to the CWA and the Orders issued under its authority, states a sufficiently plausible cause of action. The allegations are sufficient at this juncture. Since fact and expert discovery have not been completed, the Court, in its discretion, may re-visit this issue at a future time.

**Third and Fourth Claims for Relief in Defendants' Counterclaims**

In their Third and Fourth Claims for Relief, Defendants allege that the Corps' 1987 Wetlands Delineation Manual ("Manual"), relied upon by the EPA for identification of wetlands at the Great Plains Site, was issued in violation of the rulemaking procedures in the Administrative Procedure Act ("APA") and the Regulatory Flexibility Act ("RFA"). Defendants allege that the Manual is a substantive and legislative rule, subject to APA rulemaking procedures, and to the RFA's four-step process of considering and guarding against likely adverse impacts on small entities.

In its Motion, the United States contends that Defendants fail to state a claim because the Manual is interpretive only, and not a legislative rule. The Court is persuaded by the analysis found in *United States v. Ellen*, 961 F.2d 462 (4th Cir.1992) (affirming a conviction of illegally discharging pollutants into wetlands in violation of CWA, and finding use of definition of wetlands from subsequently adopted federal manual did not violate *ex post facto* prohibition); and agrees with the position of the United States here.

Previously, in Case No.1:11CV1029, ECF DKT #100, the Court discussed the CWA's definition of "waters of the United States":

>The CWA defines "navigable waters" to mean "the waters of the United States." 33 U.S.C. § 1362(7). The Corps has promulgated regulations and key definitions regarding the "waters of the United States." The definitions encompass traditional navigable waters, which include tidal waters and waters susceptible to use in interstate commerce (33 C.F.R. § 328.3(a)(1)); "tributaries" of traditional navigable waters (33 C.F.R. § 328.3(a)(5)); and wetlands that are "adjacent" to other covered waters (33 C.F.R. § 328.3(a)(7)). "Adjacent" wetlands are such that are "bordering, contiguous, or neighboring" other jurisdictional waters and include "[w]etlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like." 33 C.F.R. § 328.3(c). The Supreme Court has upheld the exercise of CWA regulatory jurisdiction over wetlands that are adjacent to traditional navigable waters. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 134 (1985).

Four agencies, the EPA, the Corps, the Fish and Wildlife Service, and the Soil Conservation Service, have been traditionally involved in identifying and delineating wetlands. The EPA and the Corps used the 1987 Manual, prior to adopting the 1989 Interagency Wetlands Delineation Manual, which was meant to provide a uniform national methodology for wetland determinations. These Manuals were "intended to be only an interpretive guide to the regulatory definition of wetlands, primarily for the use of agency personnel ... "a technical guidance document" that "provides internal procedures for agency field staff for identifying and delineating wetlands." *Ellen*, 961 F.2d at 466, quoting *Proposed Revisions to 1989 Wetlands Manual*, 56 Fed.Reg. 40, 446 (1991).

The Court concurs with the reasoning in *Ellen*, that the Manual is neither law nor a legislative rule. Thus, it is not subject to the procedures of the APA, nor of the RFA. The Third and Fourth Claims of Defendants' Counterclaims are dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

**<u>Fifth Claim for Relief in Defendants' Counterclaims</u>**

Defendants' Fifth Claim is captioned "Malicious Prosecution."  In their Opposition Brief, Defendants state that the Claim was improperly titled, and that it unequivocally recites the elements of  "Abuse of Process."  Defendants' efforts to recast their final Claim for Relief are unavailing.  The Court agrees with the United States that the intentional tort claim, whether for malicious prosecution or abuse of process, is barred by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h).

The FTCA prohibits suits against the United States for claims arising out of enumerated intentional torts, including malicious prosecution and abuse of process.  There is an exception for "acts or omissions of investigative or law enforcement officers of the United States Government ... empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. §2680(h).

Nevertheless, Defendants do not allege that their abuse of process claim arises out of the acts or omissions of such investigative or law enforcement officers.  In fact, no waiver of sovereign immunity applies to the intentional torts of employees of administrative agencies, like the individual Counterclaim Defendants named here.  *See, e.g., Matsko v. United States*, 372 F.3d 556, 560 (3rd Cir.2004).

Assuming *arguendo*, that sovereign immunity is waived, Defendants' non-compulsory, intentional tort Counterclaim is barred for failure to exhaust administrative remedies.  "The filing of an administrative claim is jurisdictional and is an absolute, non-waivable prerequisite to maintaining a civil action against the United States for damages arising from the alleged wrongful acts of a federal employee."  *Figueroa v. U.S. Postal Serv.*, 422 F.Supp.2d 866, 876 (N.D.Ohio 2006).

### III. CONCLUSION

For these reasons, the Motions (ECF DKT #44 & #56) to Dismiss Defendants' Counterclaims (ECF DKT #38 & #42) are granted in part and denied in part. The First, Third, Fourth and Fifth Claims for Relief are dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. The Second Claim for Relief remains pending for further adjudication.

**IT IS SO ORDERED.**

                                        s/ Christopher A. Boyko
                                        **CHRISTOPHER A. BOYKO**
                                        **United States District Judge**

**Dated: August 30, 2013**